## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **CORE COMMUNICATIONS, INC., et al.,** | **Case No. 2:21-cv-02771-JDW** |
| *Plaintiffs*, | |
| v. | |
| **AT&T CORP.,** | |
| *Defendant*. | |

### MEMORANDUM

This case involves a large amount of data over a significant period of time, and it seems that neither Party wants to bear the burden of having to grapple with all of it. But Core started this action, so if it wants to recover fees for the access services it provided to AT&T, then it must show that it provided those services as set forth in the governing tariffs. That means that Core bears the burden of demonstrating that its transmission of the toll-free robocalls at issue in this case constitutes Switched Access Service, as defined in its tariffs. While AT&T repeats the refrain that these calls are illegitimate, fraudulent, or otherwise improper, it need not prove the calls' illegitimacy to argue that Core cannot satisfy each element of its breach of tariff claims. However, to the extent AT&T also intends to defend itself by pointing to Core's alleged failures to police 8YY traffic in violation of various Federal Communications Commission orders and regulations, then AT&T must bear the burden of establishing that affirmative defense.

I.      **RELEVANT BACKGROUND**

Core Communications, Inc., CoreTel Delaware, Inc., CoreTel New Jersey, Inc., CoreTel Virginia, LLC, and CoreTel West Virginia, Inc. (collectively "Core"), are competitive local exchange carriers ("LECs") that provide access services as intermediate carriers. As part of its business, Core purchases toll-free telephone calls ("8YY traffic") from various originating providers and then switches and delivers that 8YY traffic to long-distance carriers (referred to as interexchange carriers ("IXCs")) or to other intermediate carriers that deliver the traffic to an IXC. At that point, the IXCs deliver the calls to their customers. AT&T Corp. is an IXC to which Core delivers 8YY traffic. Core bills AT&T for access services pursuant to its tariffs on file with the FCC and various state public utility commissions. Specifically, Core bills AT&T for "Switched Access Service" including: A) end office switching, B) 8YY database queries, and C) tandem switching and transport services.

Beginning in August 2018, AT&T refused to pay Core's invoices, claiming that "virtually 100%" of the 8YY traffic from Core is "associated with spoofed and/or fraudulent traffic." (ECF No. 19-1, Ex. A.) Core contends that AT&T owes it more than $11M in unpaid access charges and associated late fees.

In June 2021, Core sued AT&T, claiming that by failing to pay Core for access services, AT&T has breached the applicable federal and state tariffs, including tariffs that Core filed with the FCC, Delaware Public Service Commission, Maryland Public Service Commission, Pennsylvania Public Utility Commission, New Jersey Board of Public Utilities,

Virginia Corporation Commission, and West Virginia Public Service Commission. Since the start of this case, the Parties have disputed whether Core must prove the calls' legitimacy to collect from AT&T or whether AT&T must show that the calls were fraudulent to avoid having to pay for them. I invited cross-motions to resolve this issue, which will impact settlement, summary judgment, and trial.

## II.    DISCUSSION

At bottom, this case is a breach of contract matter in which the tariffs are the contracts.[1] The Parties agree that Core bears the burden of proving that it "(1) performed the services described in the tariff and then (2) billed for those services according to its tariff[.]" (ECF No. 66 at 16; *see also* ECF No. 67 at 13.) So, to resolve this dispute in some meaningful way, I must look to Core's tariff[2] to identify the aspects of that tariff that Core will have to prove.

Under its tariff, Core provides "Switched Access Service," which the tariff defines as "[a]ccess to the network or facilities of [Core] for the purpose of originating or terminating calls," among other things. (ECF No. 66-1 at 6th Revised Page No. 13.) The tariff makes Switched Access Service available "when originating or terminating calls from or to a

---

[1]    The question of which state law(s) will apply to Core's claims for breach of the state tariffs remains an open issue. While I did not need to resolve that issue for purposes of the present motion, I expect that the Parties will address choice-of-law in their summary judgment briefing.

[2]    Core has represented that its state and federal tariffs contain similar provisions and relied on citations to Core's FCC tariff in its briefing. AT&T did the same. Therefore, all references to "the tariff" in this memorandum refer to Core's federal tariff.

Company End User." (*Id.* at § 3.2.1 (Revised Page No. 42).) A "Company End User" is a "person, firm, partnership, corporation or other entity … that subscribes to or otherwise uses the local exchange or other telecommunications services of [Core]." (*Id.* at Revised Page No. 7.)  Switched Access Service occurs when "calls" occur. Under the tariff, a "call" is a "communication attempt …" (*id.*), and "traffic" is synonymous with "calls" (*id.* at Revised Page No. 14).

Core has the burden of proving that each call for which it seeks to collect complies with the terms of its tariff. Therefore, to establish its right to collect the unpaid access charges from AT&T, Core will have to prove that: A) it provided access to its network or facilities, B) for the purpose of originating or terminating calls (*i.e.,* communication attempts and/or communications), C) from or to a Company End User. Of particular relevance, to satisfy its burden, Core has to show that each call for which it seeks payment was an actual attempt at communication, not just a call (robocall or otherwise) that someone placed to generate a payment or for some reason other than communication.

Placing this burden on Core makes good sense. *First,* placing the burden on Core to demonstrate that the services complied with the terms of its tariff adheres to "the ordinary default rule that plaintiffs bear the risk of failing to prove their claims." *Schaffer ex rel. Schaffer v. Weast,* 546 U.S. 49, 56 (2005). Indeed, "[p]erhaps the broadest and most accepted idea is that the person who seeks court action should justify the request[.]" C. Mueller & L. Kirkpatrick, Evidence § 3.1, p. 104 (3d ed. 2003). Consistent with that notion,

the FCC has noted that "it is incumbent upon the LECs to charge properly and therefore to demonstrate to their customers that these charges are accurate[.]" *In the Matter of Ann. 1987 Access Tariff Filings*, 2 F.C.C. Rcd. 280, 299 (1986).

*Second*, AT&T's denial that Core provided access services authorized by its tariff is just a "negative defense," as it challenges an element, or the substance, of Core's breach of tariff claims. *See Hubbell v. World Kitchen, LLC*, 688 F. Supp. 2d 401, 422 (W.D. Pa. 2010) (quotation omitted). AT&T can defend itself without having to prove that the calls were illegitimate, fraudulent, or otherwise improper. Instead, it need only demonstrate that Core cannot prove that the 8YY traffic at issue in this case does not constitute "Switched Access Service" under the governing tariffs. This theory is not akin to an affirmative defense wherein the defendant "typically accepts the allegations contained in a complaint as true and 'then goes on to assert new matter that eliminates or limits'" the defendant's liability. *Id.* (same).

Core complains about the burden this might impose on it, and I recognize that it is a burden; but it's a burden that flows from the tariff that Core filed. Core, of course, did not have to file a tariff. Having voluntarily inserted itself into the telecommunications system, it now has to live up to the letter of the tariffs that it filed. And, of course, without having seen the evidence in this case, I don't know whether Core's proof will have to be a line-by-line analysis or whether there is some other way to satisfy its burden. I also recognize that this burden-shifting rule gives IXCs like AT&T an incentive to resist

payment for calls. But when an IXC like AT&T resists paying, it increases the chances that the dispute is going to wind up in court. While it's easy to posture outside of the courtroom, this is not a forum where parties can just throw stuff at the wall and see what sticks. If an IXC were to do that without a basis (including considering pre-suit communications with the LEC), then the odds go up of sanctions under Federal Rule of Civil Procedure 11 or 28 U.S.C. § 1927. (To be clear, I'm not accusing AT&T of that in this case. I'm just noting that those risks offer some limit to an IXC's ability to contest tariff charges willy-nilly.)

Finally, to the extent that AT&T accuses Core of engaging in some other illegal conduct, as it has done in its Answer, that is an affirmative defense on which AT&T will bear the burden of proof in this case. AT&T has clarified that it "does not allege that Core affirmatively engaged in fraud or fraudulently induced others to place illegitimate calls[,]" (ECF No. 74 at 17). But it still contends that Core cannot recoup the unpaid access charges because Core failed to comply with its obligations under federal law, such as identifying and blocking illegal 8YY robocalls. (*See id.* at 16 n.11; ECF No. 34 at p.9.) In other words, AT&T contends that it is illegal for Core to charge for robocalls that it does not take adequate steps to prevent, even if Core's transmission of those calls amounts to "Switched Access Service" under the terms of the tariff. Unlike a denial of Core's breach of tariff claim, this defense asserts new material, including any laws or regulations that render such charges "illegal" and the facts demonstrating Core's alleged failure to take meaningful

steps to prevent illegitimate traffic in the first place. As such, AT&T bears the burden of establishing this defense. *See* Fed. R. Civ. P. 8(c)(1) (listing "illegality" as an affirmative defense); *see also Affirmative Defense*, Black's Law Dictionary (11th ed. 2019) (defining affirmative defense as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true.")

## III.   CONCLUSION

Before it can collect unpaid access charges from AT&T in this matter, Core must demonstrate that those access services are consistent with the terms of its tariffs. However, to the extent AT&T intends to argue that it is illegal for Core to charge for those calls without taking adequate steps to prevent their transmission, then AT&T bears the burden of establishing that affirmative defense. An appropriate Order follows.

BY THE COURT:

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

**Date**:  March 23, 2023